# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

**MICHAEL TEAL,**                                      )
                                                      )
      **Plaintiff,**                               )
                                                      )
**v.**                                                )      **Civil Action No. 06-01702 (GK)**
                                                      )
                                                      )
**DISTRICT OF COLUMBIA,** *et al.* )
                                                      )
      **Defendants.**                              )
_____)

## DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO STAY PROCEEDINGS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER STAYING DISCOVERY

Defendant District of Columbia (District), by and through undersigned counsel, hereby respectfully moves to stay these proceedings, or alternatively for a protective order staying discovery, until the resolution of a criminal investigation of the matters at issue in this lawsuit.

In support thereof, and as explained more fully in the accompanying Memorandum of Points and Authorities, these proceedings must be stayed, or alternatively, discovery must be stayed because the interests of justice require a stay so as not to unduly prejudice the District and the other defendants.

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/_____
NICOLE L. LYNCH [471953]
Chief, General Litigation Section II

_____/s/_____

TONI MICHELLE JACKSON [453765]
Assistant Attorney General
Suite 600S
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-6602
(202) 727-3625 (fax)
Email:  toni.jackson@dc.gov

## LOCAL RULE 7(m) CERTIFICATE

Undersigned counsel exchanged e-mail correspondence with plaintiff's counsel but

was not able to obtain plaintiff's consent to the relief requested herein.

_____/s/_____

TONI MICHELLE JACKSON
Assistant Attorney General

**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MICHAEL TEAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-01702 (GK)** |
| | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO STAY PROCEEDINGS OR, IN THE ALTERNATIVE,
FOR A PROTECTIVE ORDER STAYING DISCOVERY**

I.    INTRODUCTION

Plaintiff's Complaint alleges that on the evening of May 2, 2006, plaintiff was "physically attacked" and thrown to the ground by two unidentified Washington, D.C. Police Officers.  Comp. ¶¶ 8-9.  Plaintiff further alleges that he was "punched" in the face by John Doe 3 while John Doe 1-2 held him down.  *Id.* ¶ 8.  He further alleges that he suffered "severe physical injuries that required surgical repair," and have caused him "significant pain and a loss of sensation on the right side of his face."  *Id.* ¶ 11.  Plaintiff also alleges that he was denied medical attention for his injuries, and that some of those injuries are permanent. *Id.* ¶¶ 11-12.

In his Complaint, plaintiff raises constitutional and common law claims.  According to plaintiff's counsel, "the attack on Mr. Teal is the subject of an active grand jury investigation," and that "[t]he United States Attorney for the District of Columbia and the Federal Bureau of Investigation are also familiar with this incident."  See Letter from Kenneth J. Brown, attached as Exh. A.  As a follow-up to Mr. Brown's letter, undersigned

counsel had a telephone conversation with Assistant U.S. Attorney, John Cummings, the AUSA assigned to the case. Mr. Cummings indicated that the investigation is ongoing and that he expects "some movement in the case within ninety days."

In light of the pending criminal investigation, the District of Columbia respectfully requests a stay of proceedings, or alternatively a stay of discovery, until resolution of the criminal investigation. As explained below, a stay would prevent severe prejudice to the District and the other defendants that would result from overlapping criminal and civil proceedings in this matter. To protect the plaintiff's interests, the District at this time seeks a stay for only a limited duration, just until the conclusion of the criminal investigation. Further, the District of Columbia would agree to file a status report as soon as the criminal investigation is resolved or, in any event, periodically following entry of a stay.

## II.    ARGUMENT

"[A] court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders or conditions 'when the interests of justice seem to require such action.'" Securities and Exchange Comm'n v. Dresser Indus., Inc., 628 F.2d 1368, 1375-76 (D.C. Cir. 1980), quoting United States v. Kordel, 397 U.S. 1, 12 n.27 (1970) (alterations omitted). Generally, "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." Dresser, 628 F.2d at 1375-76.

Courts have recognized the severe prejudice to a defendant simultaneously facing related criminal and civil proceedings. If the pending civil action is not stayed, then those civil proceedings could well "undermine the party's Fifth Amendment privilege against self-incrimination, expand the rights of criminal discovery beyond the limits of [criminal

procedure], expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case." Id. at 1376. "When a defendant has been indicted, his situation is particularly dangerous . . . for the risk to his liberty, the importance of safeguarding his constitutional rights, and even the strain on his resources and attention that makes defending satellite civil litigation particularly difficult, all weigh in favor of his interest." Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc., 175 F. Supp. 2d 573, 577 (S.D.N.Y. 2001).

To prevent such prejudice, federal courts have stayed civil proceedings until the conclusion of overlapping criminal proceedings against the same defendant. See Doe v. City of Chicago, 360 F. Supp. 2d 880 (N.D. Ill. 2005) (granting stay where defendant officer criminally charged for misconduct arising out of the same events underlying plaintiff's civil lawsuit); Cruz v. County of DuPage, 1997 U.S. Dist. LEXIS 9220, No. 96 C 7170, 1997 WL 370194, at *4 (N.D. Ill. June 27, 1997) (granting stay of all discovery in civil case against defendants "because there is a distinct possibility that the parallel proceedings would undercut the defendants' privileges against self-incrimination"); Volmar Distributors, Inc. v. New York Post Co., Inc., 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (finding that defendants "have a real and immediate interest in staying discovery" because an indictment based on the same factual background was currently pending against them).

"The fact that an indictment has not yet been returned – while it may be a factor counseling against a stay of civil proceedings – does not make consideration of the stay motion any less appropriate." Brock v. Tulkow, 109 F.R.D. 116 (E.D.N.Y. 1985) (granting stay of discovery pending outcome of criminal investigation); see Jones v. City of Indianapolis, 216 F.R.D. 440, 451-52 (S.D. Ind. 2003) (finding a limited stay of discovery "reasonable and appropriate" to protect the defendant officers' Fifth Amendment rights in

the event that pending criminal investigation later resulted in indictments); Walsh Securities, Inc. v. Cristo Property Mngmt., Ltd., 7 F. Supp. 2d 523, 529 (D.N.J. 1998) (although no criminal indictment yet returned, "the strong potential for an unjust result" warranted stay to prevent prejudice to defendants and to uphold their Fifth Amendment rights); Founding Church of Scientology v. Kelley, 77 F.R.D. 378, 380 n. 4 (D.D.C. 1977) (noting that the appropriateness of a stay is not limited "only to persons after they become a 'defendant.'").

In determining whether to stay an action, this Court "must balance the competing interests of the parties." Ellsberg v. Mitchell, 353 F. Supp. 515, 517 (D.D.C. 1973), citing Landis v. North American Co., 299 U.S. 248, 254-55 (1935) and Dellinger v. Mitchell, 442 F.2d 782, 786, 787 (D.C. Cir. 1971). The issuance of a stay 'would require not only a showing of 'need' in terms of protecting the other litigation involved but would also require a balanced finding that such need overrides the injury to the parties being stayed." Dellinger, 442 A.2d at 787. The initial burden is on the party applying for the stay "to demonstrate a need, however slight, which justifies a delay in the proceedings." Ellsberg, 353 F. Supp. at 517 (emphasis added).

A.    A STAY PROTECTS THE DISTRICT AND THE OTHER DEFENDANTS

In this case, a limited stay of proceedings is appropriate to prevent severe prejudice to the District and the other defendants. Proceeding with this civil action while a criminal investigation is ongoing would force the individual defendant officers into the difficult choice of waiving their Fifth Amendment privileges or effectively forfeiting the civil suit.

Similarly, the District of Columbia is equally as prejudiced as the individual officers because the District cannot mount an effective defense without its officers' testimony. For example, under the terms of its 2001 Memorandum of Agreement (MOA) with the U.S.

Department of Justice, the District cannot require an officer to speak about an incident if the U.S. Attorney's Office has not issued a written criminal declination. (See Exh. B, MOA ¶ 60, 71). Thus, the Metropolitan Police Department cannot interview its officers and complete its own internal investigation of the officers' alleged misconduct until at least the conclusion of the criminal investigation. See also Volmar Distributors, 152 F.R.D. at 40-42 (granting stay as to all defendants where stay appropriate as to two defendants who were "central figures" in the case).

B.    A STAY PROTECTS THE PLAINTIFF'S INTERESTS

The requested stay pending the criminal investigation would protect the plaintiff's interests as well. While plaintiff generally has an interest in prosecuting his civil action without delay, plaintiff has only very recently instituted this action. The underlying incident took place not even seven months ago, and it does not appear that plaintiff has yet identified or served the individual defendant officers. In addition, plaintiff has an interest in the criminal case proceeding, if necessary.

Here, the defendant's requested stay is for a limited duration of time, until the conclusion of the criminal investigation, and the District of Columbia would agree to submit periodic status reports and to permit plaintiff to seek reconsideration of the stay at any time. Therefore, the District submits that the requested stay will not cause any appreciable prejudice to the plaintiff.

C.    A STAY IS APPROPRIATE IN THIS MATTER

The requested stay should be granted because, it also has the potential to conserve the parties' resources and enhance judicial efficiency. If the U.S. Attorney's Office issues a letter of declination upon completion of its investigation, the Metropolitan Police Department can promptly complete its own internal investigation, which must occur within

ninety days thereafter. (See Exh. B, MOA ¶ 61, 74).

Both the District and the plaintiff would benefit from a completed internal investigation to guide these proceedings at the outset, especially with respect to discovery and the feasibility of early settlement discussions. In the event that the defendant officers are cleared both criminally and administratively, by the U.S. Attorney's Office and the Metropolitan Police Department respectively, then this case could proceed expeditiously with joint representation by undersigned counsel of all defendants (assuming that the defendant officers so request). Conversely, if the case proceeds without a stay and criminal or disciplinary charges are later brought against the defendant officers, a conflict of interest would arise, likely delaying the case and requiring new and separate counsel for the defendants.

If the criminal investigation results in criminal charges, then the parties will be in a better position to determine the appropriateness of any further stay. Of course, the institution of criminal charges against any defendant officer would bring into stark relief the prejudice to the defendant officer, who could not defend this action without imperiling his defense to the criminal charges. In addition to allowing a better assessment of prejudice to defendants, a limited stay now would also permit a more accurate assessment of the benefits of any future stay in terms of judicial economy. For example, the availability of transcripts and other evidence from any criminal trial may eliminate the need for certain depositions. See Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1011 (E.D.N.Y. 1992) ("The stay in this action may streamline later discovery since transcripts from the criminal case will be available to the civil parties."). A verdict in any criminal trial may also serve as collateral estoppel, eliminating the need even to litigate certain issues in this action.

D.    A STAY IS IN THE PUBLIC INTEREST

The public interest is  an additional consideration that supports the issuance of a stay in this matter.   Because this civil case is a private action for money damages, the public has no real stake in its outcome.  Cf. Dresser, 628 F.2d at 1380 (finding public interest in protecting investors and securities markets was served by parallel SEC criminal and civil enforcement proceedings).   Plaintiff makes no request for equitable relief or any allegation that the alleged harm is ongoing.   The relevant public interest in the prosecution of those responsible for criminal misconduct is fully served by the ongoing criminal investigation.   The pending civil action would not  benefit that criminal investigation and even runs the risk of interfering with the investigation by, for example, discouraging reluctant witnesses to come forward.  See Tuite v. Henry, 98 F.3d 1411, 1417 (D.C. Cir. 1996) (noting factor supporting law enforcement investigatory privilege is whether release of information would "discourage citizens from giving the government information"); Jones, 216 F.R.D. 440, 445-46 (upholding law enforcement investigatory privilege in civil rights action based on potential chilling effect on witnesses).    Therefore, the public interest supports a stay in this case.

E.    IN THE ALTERNATIVE, A PROTECTIVE ORDER STAYING DISCOVERY SHOULD BE ISSUED

When balancing all the interests involved, the District submits that plaintiff's action should be stayed until the  U.S. Attorney's criminal investigation is completed.   Even assuming, though, that this Court denies the District's request for a stay of proceedings, a sound exercise of this Court's discretion would alternatively be to enter a protective order staying discovery.  See Gordon v. Federal Deposit Ins. Corp., 427 F.2d 578, 580 (D.C. Cir. 1970) (stating that, in light of a pending criminal investigation, "the fact the civil case is not stayed does not mean that discovery must proceed in the same way as ordinary civil

litigation"). A court is also authorized to "postpone civil discovery, or impose protective orders or conditions 'when the interests of justice seem to require such action.'" <u>Dresser</u>, 628 F.2d at 1375-76.  For all the reasons stated in support of this motion, a protective order staying discovery would, in the alternative, also be appropriate relief.

lll.    CONCLUSION

For the foregoing reasons, the District respectfully requests that this Court enter an order staying these proceedings, or alternatively a protective order  staying discovery, consistent with the proposed order attached hereto.

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


_____/s/ _____
NICOLE L. LYNCH [471953]
Chief, General Litigation Section II


_____/s/ _____ _____
TONI MICHELLE JACKSON [453765]
Assistant Attorney General
Suite 600S
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-6602
(202) 727-3625 (fax)
Email:  toni.jackson@dc.gov

8

# EXHIBIT A

# EXHIBIT B

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL TEAL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 06-01702 (GK)** |
| | ) |
| | ) |
| **DISTRICT OF COLUMBIA,** *et al.* ) | |
| | ) |
| **Defendants.** | ) |
| _____) | |

## O R D E R

Upon consideration of  Defendant District of Columbia's Motion To Stay These Proceedings, or alternatively for a Protective Order Staying Discovery, the Memorandum of Points and Authorities, and any opposition thereto, for the reasons stated in the District's Motion, it is by the Court this _____ day of _____, 2006,

**ORDERED**:   That District of Columbia's Motion to Stay, or alternatively for a Protective Order Staying Discovery is **GRANTED**.

_____
GLADYS KESSLER
United States District Judge

Copies to:

Kenneth Jerome Brown
David E. Kendall
WILLIAMS & CONNOLLY, LLP
725 12TH Street, N.W.
Washington, D.C. 20005

Toni Michelle Jackson
Assistant Attorney General
441 Fourth Street, N.W., Suite 6S052
Washington, D.C. 20001

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

KENNETH J. BROWN
(202) 434-5818
kbrown@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

November 21, 2006

## BY FACSIMILE AND FIRST CLASS MAIL

Toni Michelle Jackson, Esq.
Assistant Attorney General
Office of the Attorney General
441 4th Street, N.W., Suite 6S052
Washington, D.C. 20001

Re:    Teal v. District of Columbia et al. (D.D.C., C.A. No. 06-01702 (GK))

Dear Ms. Jackson:

When we spoke last week, you said that you could not identify the Metropolitan Police Department ("MPD") officers who assaulted Michael Teal in central booking on or about May 2, 2006. In fact, you said that your investigation – which has included a conversation with the MPD's General Counsel – has revealed that Mr. Teal was not assaulted at all. We respectfully ask that you reconsider this position. We have been informed by the MPD's Office of Professional Responsibility that the attack on Mr. Teal is the subject of an active grand jury investigation, and that that Office knows the identities of the officers involved. The United States Attorney for the District of Columbia and the Federal Bureau of Investigation are also familiar with this incident. Please make any necessary inquiries and provide us with the identities of these officers as soon as possible.

In addition, please note that David Kendall will no longer be working on this case. Instead, William E. McDaniels of Williams & Connolly will be handling the case with John Ploumitsakos and me.

I appreciate your attention to these matters and look forward to hearing from you soon.

Sincerely,

Kenneth J. Brown

*Read summary of agreement*

# MEMORANDUM OF AGREEMENT

## Between the United States Department of Justice

### and the

### District of Columbia and

### the District of Columbia Metropolitan Police Department,

### June 13, 2001

## TABLE OF CONTENTS

I. INTRODUCTION

    A. Background

    B. General Provisions

    C. Definitions

II. GENERAL USE OF FORCE POLICY REQUIREMENTS

    A. General Use of Force Policy

    B. Use of Firearms Policy

    C. Canine Policies and Procedures

    D. Oleoresin Capsicum Spray Policy

    E. Implementation Schedule

III. INCIDENT DOCUMENTATION, INVESTIGATION, AND REVIEW

    A. Use of Force Reporting Policy and Use of Force Incident Report

    B. Investigating Uses of Force and Misconduct Allegations

        1. Use of Force Investigations

        2. Investigations of Misconduct Allegations

IV. RECEIPT, INVESTIGATION, AND REVIEW OF MISCONDUCT ALLEGATIONS

    A. Coordination and Cooperation Between MPD and OCCR

**B. Public Information and Outreach**

**C. Receipt of Complaints**

**D. OCCR Misconduct Investigations**

**E. Evaluating and Resolving MPD Misconduct Allegations**

**V. DISCIPLINE AND NON-DISCIPLINARY ACTION**

**VI. PERSONNEL PERFORMANCE MANAGEMENT SYSTEM**

**A. Performance Evaluation System**

**VII. TRAINING**

**A. Management Oversight**

**B. Curriculum**

**C. Instructors**

**D. Firearms Training**

**E. Canine Training**

**VIII. SPECIALIZED MISSION UNITS**

**IX. PUBLIC INFORMATION**

**X. MONITORING, REPORTING, AND IMPLEMENTATION**

**A. Independent Monitoring**

**B. MPD Compliance Coordinator**

**C. Reports and Records**

**D. Implementation, Termination, and Enforcement**

**E. Compliance**

**F. Modifications**

**MEMORANDUM OF AGREEMENT**

**Between the United States Department of Justice**

**and the**

### B. Investigating Uses of Force and Misconduct Allegations

#### 1. Use of Force Investigations

56. MPD created the Force Investigation Team (FIT) to conduct fair, impartial and professional reviews of firearm discharges. The provisions in this section build upon the investigative techniques employed by FIT and expand FIT's role within MPD.

57. Within 60 days from the effective date of this Agreement, MPD shall fully implement its plan, subject to approval of DOJ, to reallocate responsibility for MPD criminal investigations of officer use of force from District Violent Crime Unit supervisors or other District supervisors to the Force Investigation Team (FIT). The plan shall include procedures to address the rights and responsibilities of officers and supervisors in carrying out their duties, including the preparation of both preliminary investigative files and complete investigative files.

58. MPD shall consult with the USAO regarding the investigation of an incident involving deadly force, a serious use of force, or any other force indicating potential criminal misconduct by an officer. If the USAO indicates a desire to proceed criminally based on the on-going consultations with MPD, or MPD requests criminal prosecutions in these incidents, any compelled interview of the subject officers shall be delayed, as described in paragraph 60. However, in order to ensure the collection of all relevant information, all other aspects of the investigation shall proceed. The USAO shall respond to a written request by MPD for charges, declination, or prosecutorial opinion within three business days, by either filing charges, providing a letter of declination, or indicating the USAO's intention to continue further criminal investigation.

59. In every incident involving deadly force, a serious use of force, or any use of force indicating potential criminal misconduct by an officer, the USAO shall notify and consult with the Chief of Police or the appropriate OPR official whenever possible, unless doing so would compromise the investigation, or is otherwise prohibited by law, rule, or regulation.

60. MPD and the USAO jointly acknowledge the need to continue consultation throughout the course of an investigation; and recognize the investigative process may ultimately proceed to an administrative conclusion and/or criminal charges. MPD agrees that it will not compel or order a subject officer to make a statement if the USAO has not yet issued a written criminal declination, for all incidents subject to the notice and consultation provisions described in paragraphs 58 and 59.

61. FIT shall respond to the scene of every incident involving deadly force, a serious use of force, or any use of force indicating potential criminal misconduct by an officer. In each of these incidents, FIT shall conduct the investigation of the use of force. That investigation may result in criminal charges, administrative action or both. Investigators from the involved officers' District shall not conduct the investigation. Based upon its review of use of force incidents from throughout MPD, FIT shall forward policy and training recommendations to the Chief of Police or his designee.

62. FIT shall complete its administrative use of force investigations within 90 days from the criminal declination described in paragraph 60, absent special circumstances which must be documented, and shall continue to conduct investigations in accordance with paragraphs 81 and 82, below. At the conclusion of each use of force investigation, the investigator shall prepare a report on the investigation, which shall be made a part of the investigation file. The report shall

include a description of the use of force incident and any other uses of force identified during the course of the investigation; a summary and analysis of all relevant evidence gathered during the investigation; and proposed findings and analysis supporting the findings. The proposed findings shall include the following: 1) a determination of whether the use of force is consistent MPD policy and training; 2) a determination of whether proper tactics were employed; and 3) a determination whether lesser force alternatives were reasonably available.

63. Within 120 days from the effective date of this Agreement, MPD shall train and assign a sufficient number of personnel to FIT to fulfill the requirements of this Agreement.

64. Chain of command district supervisors may investigate all use of force incidents except for those incidents involving a serious use of force, serious physical injury, or any use of force indicating potential criminal conduct by an officer. At the discretion of the Chief of Police or designee, any incident that may be investigated by chain of command district supervisors may be assigned for investigation to FIT or to chain of command supervisors from a district other that the district in which the incident occurred. No supervisor who was involved in the incident shall be responsible for the investigation of the incident.

65. Chain of command use of force investigations shall be completed within 90 days following the use of force incident, absent special circumstances which must be documented, and shall be conducted in accordance with paragraphs 81 and 82, below. At the conclusion of each use of force investigation, the investigator shall prepare a report on the investigation, which shall be made a part of the investigation file. The report shall include a description of the use of force incident and any other uses of force identified during the course of the investigation; a summary and analysis of all relevant evidence gathered during the investigation; and proposed findings and analysis supporting the proposed findings. The proposed findings shall include the following: 1) a determination of whether the use of force is consistent and MPD policy and training; 2) a determination of whether proper tactics were employed; and 3) a determination whether lesser force alternatives were reasonably available.

66. Upon completion of a chain of command use of force investigation, the investigator shall forward the investigation to the Unit Commander, who shall review the investigation to ensure that it is complete and that the findings are supported by the evidence. The Unit Commander shall order additional investigation when necessary. When the Unit Commander determines the investigation is complete and the findings are supported by the evidence, the investigation file shall be forwarded to the Use of Force Review Board (UFRB). Whenever there is evidence of criminal wrongdoing, the Unit Commander shall suspend the investigation immediately and notify FIT and the USAO.

67. Within 60 days from the effective date of this Agreement, MPD shall complete the development and implementation of a policy to enhance the UFRB, subject to approval by DOJ. The policy shall require the UFRB to conduct timely reviews of all use of force investigations. The policy shall set forth the membership of the UFRB and establish timelines for UFRB review of use of force investigations. The policy shall authorize the UFRB to recommend discipline for violations of MPD's policies and training. The policy shall authorize the UFRB to direct District supervisors to take non-disciplinary action to enable or encourage an officer to modify his or her performance . The policy shall require the UFRB to act as a quality control mechanism for all use of force investigations, with the responsibility to assign to FIT, or return to the investigating unit, all incomplete or mishandled use of force investigations. The policy shall provide the UFRB the authority and responsibility to recommend to the Chief of Police, or his designee, investigative protocols and standards for all force investigations. The policy shall require the UFRB to conduct

annual reviews of all use of force cases examined to detect patterns/problems and to issue a report to the Chief of Police with findings and recommendations.

### 2. Investigations of Misconduct Allegations

68. The Office of Professional Responsibility shall be responsible for the investigation of allegations of criminal misconduct set forth in the categories in paragraph 72, (a) through (i) below. Within 60 days from the date of this Agreement, MPD shall develop a plan, subject to approval of DOJ, to allocate sufficient personnel and establish procedures to accomplish this new responsibility.

69. MPD shall notify the USAO immediately, in no case later than the next business day, following the receipt or discovery of any allegations of criminal misconduct referred to in paragraphs 72 and 73. In every incident involving allegations of criminal misconduct referred to in paragraphs 72 and 73, the USAO shall notify and consult with the Chief of Police or the appropriate OPR official whenever possible, unless doing so would compromise the investigation, or is otherwise prohibited by law, rule, or regulation.

70. MPD shall consult with the USAO regarding the investigation of an incident involving allegations of criminal misconduct in the categories of matters described in paragraphs 72 and 73. If the USAO indicates a desire to proceed criminally based on the on-going consultations with MPD, or MPD requests criminal prosecutions in these incidents, any compelled interview of the subject officers shall be delayed, as described in paragraph 71. However, in order to ensure the collection of all relevant information, all other aspects of the investigation shall proceed. The USAO shall respond to a written request by MPD for charges, declination, or prosecutorial opinion within three business days, by either filing charges, providing a letter of declination, or indicating the USAO's intention to continue further criminal investigation.

71. MPD and the USAO jointly acknowledge the need to continue consultation throughout the course of an investigation; and recognize the investigative process may ultimately proceed to an administrative conclusion and/or criminal charges. MPD agrees that it will not compel or order a subject officer to make a statement if the USAO has not yet issued a written criminal declination, for all incidents involving allegations of criminal misconduct in the categories of matters described in paragraphs 72 and 73.

72. Within 60 days from the date of this Agreement, MPD shall develop a plan, subject to approval of DOJ, to reallocate responsibility for MPD administrative complaint investigations of misconduct complaints from chain-of-command District supervisors to OPR with respect to the following:

    a. all referrals pursuant to paragraphs 76 and 77;

    b. all civil suits alleging any misconduct by an officer while acting in an official capacity;

    c. all civil suits against an officer for off-duty conduct (while not acting in an official capacity) that alleges physical violence, threats of physical violence, or racial bias;

    d. all criminal arrests of or filing of criminal charges against an officer;

e. all allegations of unlawful discrimination (e.g., on the basis of race, ethnicity, gender, religion, national origin, sexual orientation, or disability), including improper ethnic remarks and gender bias, but excluding employment discrimination;

f. all allegations of unlawful search and stops;

g. all allegations of unlawful seizure (including false imprisonment and false arrest);

h. any act of retaliation or retribution against an officer or person; and

i. all allegations of strikes, blows, kicks, or other similar uses of force against a compliant subject or administered with a punitive purpose; and

j. OPR shall assign for investigation outside of the District Chain of Command all allegations of misconduct related to the types of misconduct covered by "a" to i" of this paragraph; and

OPR shall assign to FIT all allegations of excessive force by an officer involving a use of deadly force, as defined in paragraph 15, a serious use of force, as defined in paragraph 33, or any use of force indicating potential criminal conduct by an officer, as defined in paragraph 35.

73. OPR, shall also assign for administrative investigation outside of the District chain of command the following:

a. all incidents in which both (i) a person is charged by an officer with assault on a police officer, resisting arrest, or disorderly conduct, and (ii) the prosecutor's office notifies MPD either that it is dismissing the charge based upon officer credibility or a judge dismissed the charge based upon officer credibility;

b. all incidents in which MPD has received written notification from a prosecuting agency in a criminal case that there has been (i) an order suppressing evidence because of any constitutional violation involving potential misconduct by an MPD officer, or (ii) any other judicial finding of officer misconduct made in the course of a judicial proceeding or any request by a federal or District of Columbia judge or magistrate that a misconduct investigation be initiated pursuant to some information developed during a judicial proceeding before a judge or magistrate. MPD shall request that all prosecuting agencies provide them with written notification whenever the prosecuting agency has determined that any of the above has occurred.

74. All administrative investigations of misconduct allegations conducted pursuant to paragraphs 72 and 73 shall be completed within 90 days from MPD receiving the complaint, or within 90 days from the criminal declination described in paragraph 71, where applicable, absent special circumstances which must be documented. At the conclusion of each such investigation, the investigator shall prepare a report on the investigation, which shall be made a part of the investigation file. The report shall include a description of the misconduct incident and any other misconduct identified during the course of the investigation; a summary and analysis of all relevant evidence gathered during the investigation; and proposed findings and analysis supporting the findings.

75. The Corporation Counsel's Office shall notify OPR whenever a person files a civil claim

against the City alleging misconduct by an officer or other employee of MPD.

76. MPD shall continue to require all officers promptly to notify MPD of the following: the officer is arrested or criminally charged for any conduct; the officer is named as a party in any civil suit involving his or her conduct while on duty (or otherwise while acting in an official capacity); or the officer is named as a party in any civil suit regarding off-duty conduct (while not acting in an official capacity) that alleges any of the following: physical violence, threats of physical violence, racial bias, dishonesty, or fraud by the officer. Officers shall report this information either directly to OPR or to a supervisor who shall report the information to OPR.

77. MPD shall require officers to report to MPD without delay: any conduct by other officers that reasonably appears to constitute (a) an excessive use of force or improper threat of force; (b) a false arrest or filing of false charges; (c) an unlawful search or seizure; (d) unlawful discrimination; (e) an intentional failure to complete use of force reports required by MPD policies and in accordance with procedures; (f) an act of retaliation for complying with any MPD policy or procedure; or (g) an intentional provision of false information in an MPD or OCCR investigation or in any official report, log, or electronic transmittal of information. Officers shall report such alleged misconduct by fellow officers either directly to OPR or to a supervisor who shall report the information to OPR. This requirement applies to all officers, including supervisors and managers who learn of evidence of possible misconduct through their review of an officer's work. Failure to voluntarily report as described in this paragraph shall be an offense subject to discipline if sustained.

78. The City shall in fiscal year 2002 provide all necessary funds to fully implement paragraphs 68 and 74. Misconduct investigation responsibilities shall be transitioned as positions are filled. Prior to positions being filled, investigation responsibilities shall be transitioned commensurate with available resources. Positions shall be filled and investigation responsibility transition shall be completed by December 31, 2002.

79. OPR shall continue to review all misconduct complaints as they are received. OPR shall determine whether a misconduct complaint meets the criteria (set forth in paragraphs 72 and 73 ) for being assigned for investigation outside of the District Chain of Command.

80. MPD shall prohibit any officer who has a potential conflict of interest related to a pending misconduct investigation from participating in any way in the conduct or review of that investigation.

81. In conducting administrative misconduct investigations (whether conducted by FIT, Chain of Command, or OPR, following a criminal declination, where applicable) MPD shall, subject to and in conformance with applicable law, at a minimum:

a. tape record or videotape interviews of complainants, involved officers, and material witnesses in investigations involving a serious use of force or serious physical injury (if a complainant or non-officer witness refuses to be tape-recorded or videotaped, then MPD shall prepare a written narrative of the statement to be signed by the complainant or non-officer witness);

b. whenever practicable and appropriate, interview complainants and witnesses at sites and times convenient for them, including at their residences or places of business;

     c. prohibit group interviews;

     d. notify the supervisors of the involved officers of the investigation, as appropriate;

     e. interview all appropriate MPD officers, including supervisors;

     f. collect, preserve, and analyze all appropriate evidence, including canvassing the scene to locate witnesses and obtaining complainant medical records, where appropriate; and

     g. identify and report in writing all inconsistencies in officer and witness interview statements gathered during the investigation.

82. In conducting misconduct investigations, MPD shall continue to assess the propriety of all officer conduct during the incident in which the alleged misconduct occurred. If during the course of an investigation the investigator has reason to believe that misconduct occurred other than that alleged, the investigator also shall investigate the additional potential misconduct to its logical conclusion.

83. Within 120 days from the effective date of this Agreement, MPD shall develop a manual, subject to approval by DOJ, for conducting all MPD misconduct investigations. The manual shall include timelines and shall provide investigative templates to assist investigators in gathering evidence, conducting witness interviews, and preparing investigative reports.

84. Within 90 days from the effective date of this Agreement, MPD shall develop a plan, subject to approval by DOJ, to ensure that all MPD investigators (whether conducting use of force investigations or misconduct investigations) receive adequate training to enable them to carry out their duties. All MPD investigators shall receive training and re-training in MPD policies and procedures, including, but not limited to, use of force and use of force reporting, canine deployment, transporting individuals in custody, restraints, arrests, report writing; investigative and interview techniques, including examining and interrogating witnesses, and collecting and preserving evidence; cultural sensitivity; ethics; integrity; and professionalism. MPD shall provide specialized training to investigators who conduct shooting investigations. The training shall occur within 180 days of the approval of the plan.

## IV. RECEIPT, INVESTIGATION, AND REVIEW OF MISCONDUCT ALLEGATIONS

### A. Coordination and Cooperation Between MPD and OCCR

85. Within 60 days from the effective date of this Agreement, the City and MPD shall develop a written plan, in timely consultation with DOJ, that clearly delineates the roles and responsibilities of OCCR and MPD regarding the receipt, investigation, and review of complaints. At minimum, the plan shall specify each agency's responsibility for receiving, recording, investigating, and tracking complaints; each agency's responsibility for conducting community outreach and education regarding complaints; how, when, and in what fashion the agencies shall exchange information, including complaint referrals and information about sustained complaints; and the role and responsibilities of MPD official serving on the Citizen Complaint Review Board (CCRB).

86. The City shall provide OCCR sufficient qualified staff, funds, and resources to perform the functions required by this Agreement and by District of Columbia Law 12-208 creating OCCR,

       iv. that it expressly identified in the annual fiscal year adopted budget prepared for Congressional use such obligation (not necessarily to include reference to this Agreement as such) together with the amount of money tied to performing such obligation; and

       v. that Congress acted expressly to eliminate such amount of money or to reduce it below the level necessary to perform the obligation, or that Congress made an across the board reduction in the appropriation of MPD, OCCR, or any other agency with specific obligations under this Agreement as shown in the Council's budget act without expressly saving such obligation and the across the board reduction, as applied proportionately to the amount of money shown in the adopted budget for such obligation left an insufficient amount to carry out that obligation.

    **b.** The Mayor and MPD shall make diligent efforts to safeguard all appropriated funds available to meet obligations under this Agreement from re-programming.

    **E. Compliance**

**192.** This Agreement is a public document and shall be posted on the websites of the City or MPD and of the Special Litigation Section of the Civil Rights Division of DOJ.

**193.** The City and MPD agree that they shall not retaliate against any person because that person has filed or may file a complaint, provided information or assistance, or participated in any other manner in an investigation or proceeding relating to this Agreement.

    **F. Modifications**

**194.** The Parties may jointly agree, in writing, to modify this Agreement.

**For the United States Department of Justice:**

_____
**WILLIAM R. YEOMANS**
**Acting Assistant Attorney General**
**Civil Rights Division**

_____
**STEVEN H. ROSENBAUM**
**Chief**
**Special Litigation Section**
**Civil Rights Division**

_____
**SHANETTA Y. BROWN CUTLAR**
**Special Counsel**
**Special Litigation Section**
**Civil Rights Division**
**U.S. Department of Justice**
**P.O. Box 66400**

Washington, D.C. 20035-6400
202-514-0195

DATED: June 13, 2001

For the District of Columbia and the Metropolitan Police Department:

_____
ANTHONY WILLIAMS
Mayor of the District of Columbia

_____
CHARLES H. RAMSEY
Chief of Police
District of Columbia Metropolitan Police Department

_____
TERRANCE W. GAINER
Executive Assistant Chief of Police
District of Columbia Metropolitan Police Department

_____
ROBERT RIGSBY
Corporation Counsel
Office of the Corporation Counsel
441 4th Street, NW, Suite 1060N
Washington, D.C. 20001

Approved as to form and legal sufficiency

*Return to the Civil Rights Division Home Page*